IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CINDY RODRIGUEZ et al., )<br><br>                    Plaintiffs,    )<br>       v.                                )<br><br>PROVIDENCE COMMUNITY )<br>CORRECTIONS, INC. et al.,     )<br><br>                    Defendants.    ) | Civil Action No. 3:15-cv-01048<br><br>Chief Judge Sharp<br><br>Magistrate Judge Holmes |

## <u>MEMORANDUM IN SUPPORT OF PCC AND INDIVIDUAL DEFENDANTS' MOTION TO DISMISS</u>

Providence Community Corrections, Inc., now known as Pathways Community Corrections ("PCC"), and the individual defendants, who are current and former PCC probation officers (collectively, the "PCC Defendants"), move for dismissal of Plaintiffs' claims against them on two grounds that together warrant complete dismissal of the Complaint. First, Plaintiffs' claims for money damages should be dismissed because the allegations of the Complaint concern the performance of the PCC Defendants' function as probation officers. The Sixth Circuit and district courts throughout the Circuit have consistently held that probation officers are entitled to absolute, quasi-judicial immunity. This Court, in particular, has previously held that PCC is entitled to absolute immunity from money damages in section 1983 litigation.

Second, with respect to the declaratory and injunctive relief sought, the Court should abstain under the principles established by the Supreme Court in *Younger v. Harris* and *O'Shea v. Littleton*. Federal courts do not enjoin on-going state criminal proceedings that offer a forum for plaintiffs' constitutional claims to be heard.

Finally, and in the alternative, the PCC Defendants move to dismiss several of the individual counts against them for independent reasons. For these reasons, and those demonstrated throughout this memorandum, Plaintiffs' claims against the PCC Defendants should be dismissed in their entirety.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While courts must accept as true all of a complaint's factual allegations, they need not accept as true its legal conclusions. *Id.* Neither should they accept as true a legal conclusion when it is "couched as a factual allegation." *Id.* Thus a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## I. The PCC Defendants Are Immune from Claims for Money Damages.

One of the most well established doctrines in our legal system is that judges are absolutely immune "from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("[J]udges are entitled to absolute immunity from suits for money damages for all actions taken in the judge's official capacity, unless those actions are taken in the complete absence of any jurisdiction."). Courts have extended this absolute immunity to those "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm

2

of the judicial officer who is immune." *Bush*, 38 F.3d at 847 & n.5; *see also Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1422 (6th Cir. 1996) ("[I]mmunity should be granted to state officials when (1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect [the complainant's] constitutional rights." (quotations omitted)). Courts apply a functional test to determine whether quasi-judicial officers are entitled to absolute immunity. "Under this approach, a court looks to the nature of the function performed, not the identity of the actor who performed it." *Bush*, 38 F.3d at 847 (quotations omitted).

Applying these principles, the Sixth Circuit has repeatedly held that probation officers perform a function that entitles them to absolute immunity from money damage suits under section 1983. *See Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976); *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012); *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 476-77 (6th Cir. 2007); *Love v. City of Grand Rapids*, 1996 WL 262479, at *2 (6th Cir. 1996); *Balas v. Leishman-Donaldson*, 1992 WL 217735, at *4-5 (6th Cir. 1992). The court's reasoning in *Balas* is illustrative. There, the court found that because judges perform a judicial function when they "seek[] to determine whether a defendant is complying with the terms of probation," probation officers perform a quasi-judicial function when they engage in similar activities. 1992 WL 217735, at *5. Thus, the court held, "[t]o the extent [probation officers] . . . perform[] that function at the direction of the judge, they are entitled to quasi-judicial immunity. All of the same considerations that would apply to the judge apply to the probation officer." *Id.*

Numerous district courts within the Sixth Circuit—including, on at least two occasions, this Court—have reached the same conclusion.

> [C]ourts have found that functioning as a probation official is a
> judicial function that affords quasi-judicial [immunity]. Thus, to

3

> the extent the plaintiff's claims against Parker arise from Parker's presentation of information to the state court and advocating for a finding that the plaintiff had violated the terms of his probation, Parker is entitled to immunity because he was functioning as a probation officer in performing those activities.

*Kizer v. Gordon*, 2012 WL 4711991, at *3 (M.D. Tenn. 2012) (Sharp, J.) (citations omitted); *see also Martin v. Dep't of Probation*, 2014 WL 3362236, at *1 (M.D. Tenn. 2014); *Emanuel v. Dozier*, 2013 WL 3243097, at *2 (M.D. Tenn. 2013); *Humphrey-Fitts v. Duke*, 2012 WL 3991699, at *2 (M.D. Tenn. 2012); *Johnson v. Cupp*, 2012 WL 1392090, at *4 (E.D. Tenn. 2012); *Schuh v. Pollard*, 2009 WL 3048721, at *16-17 (E.D. Mich. 2009); *Trofatter v. Mich. Dep't of Corr.*, 2009 WL 427385, at *2-3 (W.D. Mich. 2009); *Love v. City of Grand Rapids*, 1995 WL 549266, at *3 (W.D. Mich. 1995).

In fact, **this Court has already found that PCC is immune** from claims that a PCC probation officer knowingly submitted a false probation violation report and conspired with county judges, the local prosecutor, and the local police department to exact revenge on a probationer. *See Brown v. Tennessee*, 2014 WL 1278770, at *1 (M.D. Tenn. 2014) (Sharp, J.), *approving Report and Recommendation in Brown v. Tennessee*, 2013 WL 4508658, at *8 (M.D. Tenn. 2013) (Knowles, J.) ("Plaintiff's claims against Defendant Providence are solely related to its quasi-judicial function of reporting Plaintiff's noncompliance with the terms of his probation. Accordingly, Defendant Providence is entitled to quasi-judicial immunity." (citation omitted)).

Because quasi-judicial immunity is absolute, it protects those to whom it applies even against allegations of malice, corruption, extortion, and conspiracy. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) (malice and corruption); *Stout v. Naus*, 2009 WL 1794989, at *2 (M.D. Pa. 2009) (extortion); *Imbler v. Pachtman*, 424 U.S. 409, 415-16 (1976) (conspiracy). It similarly applies "even if it leaves the genuinely wronged defendant without civil redress against a

prosecutor whose malicious or dishonest action deprives him of liberty." *James v. Stengel*, 2004 WL 515458, at *3 (W.D. Ky. 2004) (quoting *Ashelman v. Pope*, 973 F.2d 1072 (9th Cir. 1986)). So long as judges act within their jurisdiction, immunity provides a total shield from suit. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.") (quotations omitted).

The allegations in this case—including malice, corruption, extortion, and conspiracies among judges, prosecutors, and probation officers—are no different than the allegations in countless other cases in which courts have found that absolute immunity applied. This Complaint benefits from the assistance of counsel, who have made these allegations more coherently and voluminously than in a typical *pro se* complaint. But, in substance, Plaintiffs' allegations are the same as those for which this Court and others routinely recognize absolute immunity for judges, prosecutors, and probation officers.

Here, all of Plaintiffs' allegations relate to actions the PCC Defendants took while acting as probation officers. Everything the PCC Defendants are alleged to have done was under the jurisdiction of the Rutherford County courts and while "functioning as . . . probation officer[s]." *Kizer*, 2012 WL 4711991, at *3. Under the precedent established by scores of cases in the Sixth Circuit, other district courts within the Sixth Circuit, and this Court's own prior decisions, the PCC Defendants are absolutely immune from suit for actions they took while functioning as probation officers. Accordingly, the Court must dismiss Plaintiffs' section 1983 claims (Counts II, IV, V, VI and VII).

5

In addition, the Sixth Circuit has held that the absolute immunity accorded the PCC Defendants under section 1983 extends to alleged civil RICO violations. *See Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) ("It would be anomalous . . . if officials who are immune from suit for alleged violations of the Constitution itself should be denied immunity from suit for alleged violations of a statute that does not incorporate the Constitution— particularly a statute as amorphous as RICO."); *see also, e.g.*, *Doe v. Boland*, 630 F.3d 491, 498 (6th Cir. 2011) ("[T]he civil RICO statute did not abolish common law absolute immunity for judges and prosecutors."); *Tinsler v. Nafziger*, 22 F. App'x 600, 601 (6th Cir. 2001) ("The district court properly granted summary judgment to [the sheriff and chief deputy] because they are entitled to quasi-judicial immunity since the [plaintiffs'] [RICO] claims against these defendants are based on the[ir] . . . participation in a court ordered foreclosure."); *Ritchie v. Holschuh*, 2002 WL 484698, at *3 (S.D. Ohio 2002) ("Defendants Clerk Murphy and Deputy Clerk Hencye are immune from Plaintiffs' claims[,] [which included among others, a RICO claim][,] under the doctrine of quasi-judicial immunity."). Federal courts throughout the country share the same view. *See, e.g.*, *Raiser v. Kono*, 245 F. App'x 732, 735 (10th Cir. 2007); *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 749 (D.S.D. 2005), *aff'd* at 219 F. App'x 613 (8th Cir. 2007); *Overton v. Torruella*, 183 F. Supp. 2d 295, 301 (D. Mass. 2001). Accordingly, Count I (RICO claims) must also be dismissed.

Finally, Tennessee common law provides an identical immunity to probation officers. As the Tennessee Court of Appeals has stated, "[j]udicial immunity has been extended beyond judges, to persons who are performing quasi-judicial functions[,]" like probation officers. *Haynie v. State*, 2010 WL 366689, at *3 (Tenn. Ct. App. 2010); *see also Miller v. Niblack*, 942 S.W.2d 533, 537 (Tenn. Ct. App. 1996) ("The doctrine of absolute judicial immunity, which first arose

6

under common law, has been extended to persons, other than judges, performing judicial or quasi judicial functions."). In *Haynie*, the probation officer's conduct involved "sign[ing] an affidavit seeking to obtain the issuance of the probation violation warrants at issue[,]" and the court held:

> It cannot be disputed that [the probation officer's] act of reporting probation violations, negligent or not, is part of her official duties—the judicial process of monitoring a convicted felon's compliance with the Court's orders. [The probation officer's] function is essential to the judicial process. The doctrine of quasi-judicial immunity applies to a probation officer to the extent the function performed was judicial in nature. [The] Probation Officer['s] alleged negligent actions in this case occurred while she was performing a judicial function, seeking the issuance of a probation violation warrant for the reasons stated in the affidavit. Therefore, she has immunity in this case.

*Haynie*, 2010 WL 366689, at *3. Here, too, all of Plaintiffs' claims involve conduct by the PCC Defendants while performing probationary services. Therefore, under Tennessee law, the PCC Defendants are entitled to immunity, and Counts III (contract violates Tennessee law) and VIII (abuse of process) must be dismissed.

## II.    The Court Should Abstain from Granting Injunctive or Declaratory Relief.

In their memorandum opposing Plaintiffs' request for a preliminary injunction, the PCC Defendants argued that the Court should abstain from issuing injunctive relief that "would contemplate interruption of state proceedings to adjudicate assertions of noncompliance," would be "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials," and "would indirectly accomplish the kind of interference that [*Younger*] and related cases sought to prevent." *O'Shea v. Littleton*, 414 U.S. 488, 492, 450 (1974); *see* Def.'s Mem. (Doc. No. 41), at pp. 7-13. There, the PCC Defendants showed that all the requirements for abstention under *Sprint* and *Middlesex* are met. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013); *Middlesex County Ethics Comm. v. Garden*

*State Bar Ass'n*, 457 U.S. 423 (1982). The PCC Defendants now adopt and incorporate their previous abstention arguments and state that, for the reasons provided in those arguments, the Court should dismiss Plaintiffs' claims seeking injunctive and declaratory relief. *See Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("[W]here an injunction would be impermissible . . . declaratory relief should ordinarily be denied as well."). As the PCC Defendants argued before, *O'Shea* is directly on point and controls the outcome of Plaintiffs' claims for injunctive and declaratory relief. Just like the plaintiffs in *O'Shea*, Plaintiffs here seek "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *O'Shea*, 404 U.S. at 500. And just like the Supreme Court in *O'Shea*, the Court here must abstain.

Further, the Court can determine as a matter of law that Plaintiffs had "an opportunity to press [their] claim[s] in the state courts." *Moore v. Sims*, 442 U.S. 415, 432 (1979) (explaining that this is the requirement of *Gerstein v. Pugh*, 420 U.S. 103 (1975)); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) (holding that "[n]o more is required to invoke *Younger* abstention" than that plaintiffs have "an opportunity to present their federal claims in the state proceedings"). Plaintiffs could have raised their concerns at sentencing: Tennessee courts are statutorily prohibited from assessing probation supervision fees and "supervision, counseling or treatment" costs for defendants who are unable to pay. *See* Tenn. Code Ann. § 40-35-303(i)(1) (prohibiting imposition of supervision fee on defendant "found to be indigent and without anticipated future funds with which to make the payment"); *id.* § 40-35-303(i)(2) ("[T]he court may require the defendant to pay any or all costs for the defendant's supervision, counseling or treatment in a specified manner, based on the defendant's ability to pay."); *Juidice*, 430 U.S. at 337 & n. 14 (finding that the "most propitious moment" for plaintiffs to raise challenges to a state court's

8

contempt orders "would have been at the hearing on the order to show cause" why the orders should not be issued).

Moreover, even if Plaintiffs failed to bring their challenges at sentencing, the Complaint shows that Plaintiffs not only can raise, but in fact *have raised*, their concerns to the sentencing judges at other points in the probation proceedings. And when they have done so, the judges have provided redress. *See* Compl. ¶ 108 ("Ms. Rodriguez was able, with the assistance of counsel, to apply to the judge to be put on an unsupervised payment plan . . . ."); ¶ 176 ("[Ms. Carney] was placed on a payment plan directly with the Court . . . ."). Plaintiffs have made no showing that they are unable to present their claims in their probation proceedings and are therefore foreclosed from arguing this opportunity is lacking. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Tennessee v. McDonald*, 2008 WL 413629, at *1 (M.D. Tenn. 2008) (remanding case raising constitutional challenge back to General Sessions court because of *Younger* doctrine and concluding that "it is clear that the courts of this state are fully able to consider Plaintiff's constitutional claims").

In sum, if Plaintiffs wish to challenge aspects of their probation, they can raise those challenges in the courts that sentenced them to probation and retain jurisdiction over them. *Younger*, *O'Shea*, and their progeny instruct that this Court must dismiss Plaintiffs' claims for injunctive and declaratory relief in Counts II, III, IV, V, VI, and VII.

9

## III. Several Counts in Plaintiffs' Complaint Should Be Dismissed for Independent Reasons.

### A. Plaintiffs' Failure to Comply with Fed. R. Civ. P. 5.1 Warrants Dismissal Without Prejudice (Count II).

In Count II, Plaintiffs contend that the Due Process Clause of the Fourteenth Amendment prohibits the use of a private, for-profit corporation as a provider of probationary services because its employees have a "personal financial interest" in the decisions they make while acting as probation officers. Compl. ¶¶ 283–86. This claim draws into question a Tennessee statute that has, for more than twenty years, permitted private companies to supervise misdemeanor probationers and that the Tennessee Attorney General has specifically opined permits private probation companies to operate for-profit and with a "personal financial interest." *See* Tenn. Code Ann. §§ 40-35-302 & -303; Tenn. Op. Att'y Gen. No. 99-029 (1999) (citing Tenn. Code Ann. § 40-35-302) ("[Courts] may order probationers to be supervised by private for-profit . . . entities."). This statute also requires courts to impose probation supervision fees and mandates that willful nonpayment of these fees will be grounds for revocation of probation. *See* Tenn. Code Ann. § 40-35-303(i) ("[T]he defendant must pay not less than [$10] nor more than [$45] per month as part payment of expenses incurred by the [supervising entity] . . . . Willful failure to pay the supervision fee . . . shall be grounds for revocation of probation and the supervising entity shall report all instances of nonpayment to the sentencing court.").

Therefore, when engaging in probation supervision, charging supervision fees, collecting court costs and fines owed, and reporting nonpayment, PCC is engaging in conduct expressly permitted—and in some instances required—by state statute. If this Court were to declare such conduct unconstitutional, it necessarily would be declaring the state statutes that permit or require such conduct to be unconstitutional, too. To see that Plaintiffs' allegations draw the

10

constitutionality of Tennessee statutes into question, the Court need only observe how easily Plaintiffs' claims could be re-written as constitutional challenges to provisions of the Tennessee Code: "~~the Contract~~ *Tenn. Code Ann. §§ 40-35-302 & -303* unconstitutionally . . . establishes a private actor with a personal financial stake in the outcome of each case as a supposedly neutral state 'probation officer,' mandates that particular actions be taken and particular amounts charged in particular judicial cases, and requires that nonpayment of costs and fees be made a 'violation' of probation." *See* Compl. ¶ 289. Thus, Count II "draw[s] into question the constitutionality of . . . state statute[s]." Fed. R. Civ. P. 5.1(a).[1]

When a claim "draw[s] into question the constitutionality of a . . . state statute[,]" Federal Rule of Civil Procedure 5.1 requires that notification be filed and served upon the appropriate state law enforcement official. This is because "[t]he public interest is not well served when a . . . statute is challenged and potentially invalidated in litigation among private parties . . . in the absence of input from the institution that has the responsibility and expertise to defend [statutes]." *Oklahoma ex rel Edmondson v. Pope*, 516 F.3d 1214, 1216 (10th Cir. 2008). Count II is a collateral attack on the constitutionality of state statutes permitting or requiring the conduct of which Plaintiffs complain, and the State's input is, therefore, required.

Because Plaintiffs draw into question the constitutionality of Tennessee Code provisions without bringing suit against the State of Tennessee, one of its agencies, or one of its officers or employees in their official capacity, Plaintiffs had to promptly file notice of their constitutional challenge, serve it on the Tennessee Attorney General, and allow the sixty-day window for intervention provided by Fed. R. Civ. P. 5.1(c). Plaintiffs failed to do so, and courts have

---

[1] The repercussions from a ruling in Plaintiffs' favor would affect state and county courts all over Tennessee, and is all the more reason the Attorney General's participation is required.

repeatedly dismissed cases where plaintiffs have failed to meet Rule 5.1's notice requirement. *See Pyle v. Woods*, 2015 WL 5794345, at *2 (D. Utah 2015); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014); *Cabiao v. Suyes*, 2011 WL 62143, at *2 (W.D. Wash. 2011); *Citizens For a Better Lawnside, Inc. v. Bryant*, 2006 WL 3825145, at *8 (D.N.J. 2006). Accordingly, Count II should be dismissed without prejudice until the Tennessee Attorney General is appropriately noticed.

      B.      *Plaintiffs Lack Standing to Declare the PCC-Rutherford County Contract Void for Public Policy, and Any Such Claim Is Time Barred and Fails on the Merits (Count III).*

In Count III, Plaintiffs seek a declaratory judgment and injunction that would "void[] the Contract between PCC, Inc. and Rutherford County as contrary to Tennessee law." Compl. ¶ 288. Plaintiffs allege that the "terms and conditions" of the contract are "harmful to the public" and "in conflict with federal and state law." *Id.* at ¶ 289. Plaintiffs further allege that they are "intended third-party beneficiaries to the Contract." *Id.* at ¶ 290. Plaintiff's allegations are incorrect as a matter of law, and Count III should be dismissed.

Generally, only parties to a contract can maintain an action based on the contract. *See Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) ("[T]raditional privity rules provided that those who were not parties to a contract had no right to sue for its breach."). In an attempt to overcome this obstacle, Plaintiffs allege they are intended third-party beneficiaries to the Rutherford County contract. However, this Court has already held as a matter of law that a probationer is not a third-party beneficiary to the PCC-Rutherford County contract. In *Bell v. Providence Community Corrections, Inc.*, the Court rejected a probationer's claim that she could enforce a provision of the PCC-Rutherford County contract as a third-party beneficiary. 2011 WL 2218600 (M.D. Tenn. 2011). "In order to make a citizen a third-party

12

beneficiary to a government contract, the contract 'must manifest[] a specific intent to grant individual citizens enforceable rights thereunder.'" *Id.* at *5 (quoting *Int'l Mkt. & Rest. Inc. v. Belmont Univ.*, 2010 WL 4514980, at *4 (Tenn. Ct. App. 2010)). As the Court has already held with respect to this particular agreement, "there is no suggestion that the agreement gave probationer third-party rights to enforce compliance, and any alleged breach is a matter between Rutherford County and PCC." *Id.*

Even if Plaintiffs had standing, any claim that the terms of the contract should be declared void on grounds of public policy is time barred. The statute of limitations for contract actions under Tennessee law is within six years of accrual. Tenn. Code Ann. § 28-3-109(a)(3). Plaintiffs' complaint is with "the terms and provisions" of the agreement. Compl. ¶ 289. Because the terms and provisions are apparent on the face of the contract, Plaintiffs' claim that the contract terms violate public policy accrued no later than the time the agreement was signed by PCC and Rutherford County in December 2006. *See* Compl. at Exh. 1, p. 5. Because Plaintiffs' complaint was not filed until October 1, 2015, the contract claim is barred by the statute of limitations.

Finally, even if Plaintiffs could challenge PCC's contract with Rutherford County, this Court still could not declare the contract void as against public policy. "Public policy in Tennessee is to be found in its constitution, statutes, judicial decisions and applicable rules of common law." *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998) (quotations omitted). Determining public policy "is primarily a function of the legislature," and courts may make this determination only "in the absence of any constitutional or statutory declaration." *Id.* Here, Plaintiffs ignore the comprehensive statutory and regulatory system Tennessee has enacted to permit and regulate private probation services in the state. Yet this regulatory system exists, and undoubtedly expresses the General Assembly's determination that public policy favors private

13

probation services in Tennessee. To the extent Plaintiffs believe that Tennessee's private probation system—which, among other things, permits private probation services, mandates the imposition of probation supervision fees, requires probation officers to report all instances of nonpayment, instructs courts to revoke probation for willful nonpayment, and establishes a state agency to oversee private probation companies—is bad policy, they raise questions that have already been answered directly by the legislature. For all these reasons, Count III should be dismissed.

      C.    *Plaintiffs Cannot State an Equal Protection Claim Based on the Fact Plaintiffs Are Treated Differently Than Non-Probationer Debtors (Count IV).*

In Count IV, Plaintiffs allege that Defendants violate the Equal Protection Clause because the use and threat of jail imposes a harsher restriction "on debtors whose creditor is the government compared to those who owe money to private creditors." Compl. at p. 69. According to the Complaint, "the County takes advantage of its control over the machinery of the County jail, prosecutorial, court, and police systems to deny debtors the *statutory protections* that every other Tennessee debtor may invoke *against a private creditor.*" Compl. ¶ 293 (emphasis added). Plaintiffs allege they have not received equal protection of the law because "non-government creditors are not permitted to jail them, threaten to jail them, or compel their repeated arrest and court appearances . . . . ." Compl. ¶ 294. Count IV should be dismissed because the Equal Protection Clause does not function in this manner.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Supreme Court has stated that this language 'embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). A probationer who owes court

costs, fines, and fees, and whose liberty can be revoked for failure to meet the conditions of probation (including payment of costs), occupies a categorically different position than a person who owes a debt to a non-governmental entity for a consumer good. As this Court has already held, Congress passed a statute (the Fair Debt Collection Practices Act) to provide certain protections to consumer debtors, but chose not to provide those protections to probationers. *Bell*, 2011 WL 2218600, at *4-5. In Count IV, Plaintiffs essentially contend that it is unconstitutional to provide statutory protections to non-government debtors unless they are also extended to probationers. Plaintiffs cannot state a claim under the Equal Protection Clause by comparing their treatment by the County (or PCC Defendants) to the treatment of consumer debtors by non-governmental entities. Count IV should be dismissed because the Constitution does not require that the statutory protections afforded consumer debtors also apply to probationers.

   D.   *Plaintiffs' Claim Fails Because the PCC Defendants Cannot Place Individuals on Probation (Count V).*

In Count V, Plaintiffs allege that the Fourteenth Amendment prohibits placing individuals who cannot pay their court judgments on supervised probation, contending in conclusory fashion that Rutherford County has a policy or practice of doing so. Compl. ¶ 296. The alleged constitutional violation is placing individuals on supervised probation if they cannot pay. Tennessee statutes and rules establish the process for making this determination. Every person accused of a misdemeanor who is in jeopardy of incarceration has the right to counsel, and the court is required to advise the defendant of the right to appointed counsel if the defendant is indigent. Tenn. Code Ann. § 40-14-102; Tenn. Sup. Ct. R. 13(d)(1)(A). At the sentencing hearing, the "court shall have the authority to impose probation as part of its sentencing determination." Tenn. Code Ann. § 40-35-303(b). As a "condition precedent" in misdemeanor probation cases, the defendant "must pay" a monthly probation supervision fee unless "the

15

defendant is found to be indigent." Tenn. Code Ann. § 40-35-303(i)(1).[2] Therefore, when convicted (by trial or plea agreement) of a misdemeanor and sentenced to supervised probation in lieu of jail time, the defendant has the opportunity, with the assistance of appointed counsel, to establish indigence and be relieved of the monthly supervision fee.

This uncontroverted statutory process demonstrates two facts relevant to Count V of the Complaint: (1) the PCC Defendants have nothing to do with the alleged "policy and practice" of placing people on supervised probation; and (2) Tennessee law compels judges not to order supervised probation if a misdemeanor defendant demonstrates indigence and ensures all defendants have a lawyer to make that showing on their behalf. *See also* Compl. ¶ 293 (acknowledging that the County places defendants on probation). Thus, Plaintiffs cannot state a claim against the PCC Defendants for placing individuals on probation for allegedly improper reasons, and Count V should be dismissed.

E.     *PCC Cannot Issue or Execute Arrest Warrants or Place Individuals in Jail, Nor Is It Unconstitutional to Arrest Individuals for Failure to Comply with the Terms of Their Probation or Set Bonds Pending a Revocation Hearing (Counts VI and VII).*

In Counts VI and VII, Plaintiffs allege it is unconstitutional to issue and execute arrest warrants against individuals that fail to pay amounts owed as a condition of probation without first determining whether that failure was willful. Compl. ¶ 298. Plaintiffs further allege it is unconstitutional to place an individual in jail on a secured money bond following execution of an arrest warrant and pending a revocation hearing. Compl. ¶ 301.

---

[2] The statute mandates payment of the monthly supervision fee as a "condition precedent," meaning this payment takes first priority and precedes other required payments. This lays to rest Plaintiffs' erroneous insinuation that prioritizing payment of the supervision fee above other costs is illegal. *See, e.g.*, Compl. ¶ 4 ("PCC, Inc. is given discretion to pay itself first from the money that it extorts…."). Like most of the practices alleged in Plaintiffs' Complaint, payment of the supervision fee as a condition precedent is not only legally permissible, it is statutorily required.

16

First, the PCC Defendants cannot issue or execute arrest warrants and it is not alleged that they do so; judges and county law enforcement officers are the only people with the authority to issue warrants and arrest individuals, respectively. *See* Tenn. Code Ann. § 40-35-311 (issuance); Tenn. Code Ann. § 40-35-303(o) (execution). Similarly, the PCC Defendants have no authority to place individuals in jail—instead, they follow Tenn. Code Ann. § 40-35-303(i)'s requirement that they report probationers' failures to pay to the sentencing judge. Only the judge can cause the probationer to be incarcerated. Thus, Plaintiffs have not stated a claim against the PCC Defendants with respect to this alleged conduct. To the extent Plaintiffs allege that PCC "seeks" arrest warrants, the Tennessee Code requires PCC to report failures to pay. Tenn. Code Ann. § 40-35-303(i) ("[T]he supervising entity *shall* report all instances of nonpayment to the sentencing court." (emphasis added)).[3]

Second, accepting these allegations as true, it is not unconstitutional to arrest probationers for failing to pay costs and fees owed as a condition of probation. Since filing the Complaint, Plaintiffs have acknowledged that an arrest for failure-to-pay does not violate the Constitution. "If the Defendants believe in good faith that any misdemeanor PCC, Inc. probationer has committed a violation of their probation—either because they have not paid their court debts and private PCC, Inc. probation fees or for any other alleged violation of probation conditions—they must either issue a valid summons for revocation proceedings *or release them after arrest* pursuant to their own recognizance . . . ." Pl.'s Mem. (Doc. No. 37), at p. 2 (emphasis added). As Plaintiffs themselves have conceded, issuing and executing arrest warrants for failures to pay amounts owed as a condition of probation is not unconstitutional.

---

[3] Once again, to the extent Plaintiffs make any allegations against the PCC Defendants with respect to Count VI, they "draw[] into question" the constitutionality of a Tennessee statute, despite having failed to comply with the previously discussed notice requirements of Fed. R. Civ. P. 5.1.

17

Nor is it unconstitutional to set a bond amount at the arrest-warrant stage pending a revocation hearing. Such a conclusion would well exceed what the Constitution requires in the pretrial context, despite that a post-conviction probationer is not entitled to equivalent procedural safeguards. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *see also* Def.'s Post-Hearing Mem. (Doc. No. 51), at pp. 2-4. The Constitution requires that a probationer receive his or her revocation hearing "within a reasonable time after [being] . . . taken into custody," and there is no allegation that Plaintiffs do not receive such a hearing within the time deemed acceptable by the Supreme Court in this context. *See Morrissey*, 408 U.S. at 488 (finding that it would not be unreasonable to hold a parole revocation hearing two months after a parolee is taken into custody); *Gagnon v. Scarpelli*, 411 U.S. 778, 783 (1973) (making *Morrissey* applicable to probation revocation); *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974). The Constitution proscribes, at a probation revocation hearing based on a failure to pay, *sentencing a probationer to jail time if that failure was non-willful. See United States v. Bearden*, 461 U.S. 660, 672 (1983) (emphasis added) ("[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay."). No court has ever held that before a warrant issues for the arrest of a probationer, the judge must make a finding that a failure to pay was willful. Counts VI and VII do not allege any practices that violate the Constitution and suffer from the same affliction as many of Plaintiffs' allegations: They represent what Plaintiffs' counsel would prefer the Constitution to require, rather than what it has been held to require. Counts VI and VII should be dismissed.

     *F.*    *The Court Should Dismiss Plaintiffs' Claims Against the Individual Defendants.*

Plaintiffs must plead sufficient factual matter to state a plausible claim for relief against each of the individual defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs

have failed to meet this requirement. Plaintiffs' voluminous Complaint makes substantive allegations about Defendants Bunge (formerly McCall), Haley, and Banks only in a single paragraph that describes how PCC probation officers acted generally. *See* Compl. ¶ 13. The facts alleged in this paragraph are not sufficient to show that these defendants are liable under any of Plaintiffs' eight Counts.[4] The Complaint contains similarly sparse allegations against Defendants Hyde and Roberts (formerly Schexnayder), who in addition to being mentioned in Paragraph 13 allegedly told Plaintiff Robinson his indigency was not their concern and reported him to the court for his failure to pay. *See* Compl. ¶¶ 210, 214, 219. Again, these allegations do not demonstrate liability under any of the counts in Plaintiffs' Complaint: the Tennessee Code required Defendants Hyde and Roberts to report Plaintiff Robinson's nonpayment to the sentencing court whether willful or not. *See* Tenn. Code Ann. § 40-35-303(i)(3). Plaintiffs' allegations against Defendant Smith fare no better. She is alleged merely to have informed Plaintiff Johnson of her statutory obligation to report nonpayment and of probation procedures generally. *See* Compl. ¶¶ 13, 198, 200, 204. Finally, and for the same reasons, Plaintiffs' allegations against Defendants Jackson and Woodlee are also insufficient. *See* Compl. ¶¶ 13, 85, 86, 99, 124, 146-47, 150, 161-63, 166, 169-70. Defendant Jackson is not liable, for example, for informing Plaintiff Carney that the Rutherford County court would charge a fee for filing an

---

[4] Plaintiffs allege in Paragraph 13, as they do throughout the Complaint, that the individual defendants "made oral or written threats" to "violate" the named Plaintiffs for failure to pay. Plaintiffs editorialize the facts when they refer to these communications as "threats." The fact alleged is that probation officers informed probationers that they are required to notify the court of nonpayment. No liability can attach to this allegation because probation officers are required to report nonpayment to the sentencing court. *See* Tenn. Code Ann. § 40-35-303(i)(3); *cf. Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990) ("'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do—that is, give warning of your intention to do—in that event, and thus allow the other person the chance of avoiding the consequence.'" (quoting *Vegelahn v. Guntner*, 44 N.E. 1077, 1081 (Mass. 1896) (Holmes, J., dissenting))).

19

indigency motion. *See* Compl. ¶ 166. And Defendant Woodlee cannot be liable for telling Plaintiff Pullum she would "violate" her for not performing "required community service" and for failing to satisfy other conditions of probation—probation officers must inform the sentencing court when probationers fail to comply with the conditions of their probation. *See* Compl. ¶ 147. Accordingly, Plaintiffs' claims against the individual defendants must be dismissed.

> G.    *Plaintiffs' Group Pleading Warrants Dismissal.*

Plaintiffs' Complaint is rife with collective and conclusory references to "Defendants" that are insufficient to state claims for relief. Many of these instances of group pleading occur in places where the PCC Defendants cannot possibly have liability. Plaintiffs allege in Count V, for example, that "[t]he Defendants' policy and practice is to use supervised probation for those people who cannot afford to pay the court judgment in full." Compl. ¶ 296. However, the PCC Defendants cannot sentence anyone to supervised probation; only state and county judges have the authority to do that. Plaintiffs recognize this limitation elsewhere in the Complaint. *See* Compl. ¶ 293 (alleging that "the County place[s] indigent people on . . . probation" and that the County has "control over the machinery of the County . . . court").

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (affirming dismissal where plaintiffs made collective references to "Defendants" and did not "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right"); *Watkins v. Kajima Int'l Corp.*, 2010 WL

20

3808293, at *2 (M.D. Tenn. 2010), *report and recommendation adopted sub nom. Watkins v. Kajima Int'l, Inc.*, 2010 WL 3806816 (M.D. Tenn. 2010); *see also Miller v. City of Detroit*, 2013 WL 2446129, at *2 (E.D. Mich. 2013). Put simply, Plaintiffs' shotgun pleading should not be allowed to proceed. Plaintiffs must specify which actor they allege to have been responsible for each claim so that the various and uniquely situated Defendants—a municipality, a private company, and its current and former individual employees—are not required to answer allegations that could not possibly pertain to them.

## CONCLUSION

As this Court and others have consistently held, the PCC Defendants are immune from Plaintiffs' claims for money damages that seek to challenge the manner in which they perform the quasi-judicial function of probation officers. Under the Supreme Court's decision in *O'Shea v. Littleton*, the Court must abstain from issuing declaratory relief or enjoining on-going state criminal proceedings in which Plaintiffs have the capacity to raise the issues that are the subject of their Complaint. For these reasons and others demonstrated in this memorandum, Plaintiffs' Complaint should be dismissed.

Dated: December 2, 2015

Respectfully submitted,

/s/ Lisa S. Rivera
Lisa S. Rivera
Kathryn H. Walker
David R. Esquivel
BASS, BERRY & SIMS
150 Third Ave. South, Suite 2800
Nashville, TN 37201-3001
T: (615) 742-6200
F: (615) 742-2868

*Attorneys for Pathways Community*

21

*Corrections, Inc.*
*Kayla Banks*
*Kelly Bunge*
*Kelly Haley*
*Nisha Hyde*
*Jasmine Jackson*
*Amanda Roberts*
*Tiara Smith*
*Briana Woodlee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served this 2nd day of December, 2015, upon all parties of record through the Court's electronic filing system as listed below:

Jonathan Jacob Cole
Sarah D. Murray
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
211 Commerce Street
Suite 800
Nashville, TN 37201
jcole@bakerdonelson.com
smurray@bakerdonelson.com

James C. Cope
Josh A. McCreary
E. Evan Cope
Blake Allan Garner
Cope, Hudson, Reed & McCreary
16 Public Square N.
Murfreesboro, TN 37133
jcope@mborolaw.com
jmccreary@mborolaw.com
ecope@mborolaw.com
bgarner@mborolaw.com

Lori H Patterson
Kristine L. Roberts
Matthew G. White
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
First Tennessee Building
165 Madison Avenue
Suite 2000
Memphis TN 38103
lpatterson@bakerdonelson.com
kroberts@bakerdonelson.com
mwhite@bakerdonelson.com

Alec Karakatsanis
Phil Telfeyan
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, DC 20001
alec@equaljusticeunderlaw.org
ptelfeyan@equaljusticeunderlaw.org

/s/ Lisa S. Rivera

23